## Rhine Estate

*Howard C. Bare*, for accountant.

*J. Marlin Shreiner*, for objector.

APPEL, A. J., June 5, 1975.—Stella N. Rhine died October 13, 1968, having bequeathed the residue of her estate to the Farmers National Bank of Ephrata, Pa., "in trust, however, to invest the same in good and safe securities and to pay the net income thereof semi-annually to my friend, Harry Meckley, Sr., for and during the term and period of his natural life." The will provided that, upon the death of Meckley, the

residue is to be divided between two churches after the payment of several legacies totalling $8,000.

Meckley died on November 13, 1974, thereby terminating the trust. The trustee, now by consolidation the Farmers First Bank, thereafter filed its account. The following credit appears in the income account:

"1974

"Nov. 25

　　　. 　　Paid, Loss on early payment of
　　　　　Farmers First Bank Certificate of
　　　　　Deposit No. 17564 dated 8/10/74
　　　　　due 8/10/78　　　　　　　　$900.54"

Objection thereto was filed by the personal representative of Meckley's estate and a hearing was held thereon. Unfortunately, counsel for the objector was not present at the hearing; therefore, the record is not as complete and adequate as would be desirable in a matter of some significance.

From an exhibit marked ARA No. 1, designated "Calculation of Penalty," it appears that on August 10, 1973, the trustees renewed a certificate of deposit by which the maturity date was established four years hence, i.e., August 10, 1977. The original sum was $21,200. In February 1974, following an examiner's objection thereto, the certificate was reduced to $20,000. Interest was paid thereon at the rate of 7½ percent. On November 24, 1974, shortly after the death of Meckley, the trustee presented the certificate to its commercial department for payment and received the sum of $19,148.77, representing the face amount of the certificate of $20,000, plus accrued interest not yet paid of $49.31, less forfeiture and penalty of $900.54.

Section 329.4(d) of the Federal Deposit Insurance Corporation Rules and Regulations, 12 CFR §329.4 (d), requires that on payment before maturity there may not be received interest at a rate in excess of the maximum rate paid savings deposits and that all in-

terest for a period of three months shall be forfeited. Since the rate on savings deposits had been five percent during the life of the certificate, the interest forfeiture was determined, at the rate of two and one-half percent, to be $653.97. The 90-day penalty amounted to $246.57.

The record establishes that in August 1973, when the certificate of deposit was issued, Harry H. Meckley was 88 years of age, that a little over $21,000 was then available for investment, that the bank knew nothing about Meckley's condition at that time and made no inquiry concerning it, that Treasury Bills were then paying a comparable rate without penalty and that no consideration was then given by the trustee to investing in Treasury Bills or anything except certificates of deposit.

Since the will is silent with regard to investment authorization, we are required to examine "Fiduciaries Investments," Chapter 73 of Probate, Estate and Fiduciaries Code of June 30, 1972, P. L. 508 (No. 164), as amended, 20 Pa.C.S.A. §101, et seq., to ascertain whether the trustee had authority to invest in the certificate. Section 7313, Interest-bearing deposit, provides as follows:

"An interest-bearing deposit in any bank, bank and trust company, savings bank, or national banking association, located within the Commonwealth, shall be an authorized investment if:

"(1) the maturity date or the permissible date of withdrawal does not exceed one year from the date of the deposit or any renewal thereof."

It is obvious that the maturity date in the present situation exceeds one year. Apparently, the permissible date of withdrawal is at any time within the four-year period albeit that, if withdrawal is made before the expiration of the period, forfeiture and penalty shall be imposed. It may be that the withdrawal contemplated in section 7313 was one which

would be completed without stricture; however, the act is silent thereon and we are not prepared in this case to supply words where none are present. Since a determination of whether the investment was authorized is not requisite to the disposition of the matter, we will not decide the question but will assume for purposes of this discussion that the investment was made with authority.

The thrust of the objection is that the income beneficiary should not lose interest which had been earned and that the loss incurred upon withdrawal should be imposed on the remaindermen. Since the will provides both for payment of legacies totalling $8,000 and a division of the residue between two churches, and since the balance for distribution is $22,217.49, it was necessary for the trustee to withdraw the certificate of deposit in order to make distribution. However, to impose the loss on the remaindermen to permit the income beneficiary to enjoy a high return unimpaired by forfeiture and penalty is patently unfair and unjust. Such a result would be nothing less than robbing Peter to pay Paul.

We have analyzed Chapter 81 of the Code, supra, principal and income, with regard to placing the onus of loss and have not found guidance there. We deem that under section 8103 the money which was received from time to time on the certificate to have been income, since it has the attributes of interest on money loaned. We deem that the face value of the certificate, being the sum to be received as a repayment of a loan, is principal.

The certificate, if withdrawn before maturity, has some similarities to a premium bond in that the sum to be received would, of necessity, be less than that paid; however, we do not believe that this similarity makes the provisions of section 8106, premium and discount bonds, applicable in the present situation.

Section 8111 of the code provides that ordinary

expenses and charges, incurred with the trust estate or with its administration and management, shall be paid out of income, and that all other expenses, including cost of investing or reinvesting principal, shall be paid out of principal. We do not visualize that forfeiture and penalty constitute ordinary expenses and charges, nor do we believe that they are a cost of investing. For practical purposes, they are an expense of liquidation and on this basis it may be argued that the expense would properly be paid out of principal under this section; however, we reject this argument because the result would be unconscionable.

Our attention has heretofore been focused on the question of whether the loss should be borne by either the income legatee or the residuary remaindermen. Having sought a solution as between these parties without avail, we next inquire into the subject of the duty of the fiduciary toward the income beneficiary and the remaindermen when the investment was made.

Section 183 of the Restatement 2d, Trusts, states that:

"When there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them."

Impartiality in determining investment policies requires that the trustee consider the safety of the fund invested and the amount and regularity of the income. We, therefore, inquire into the manner in which the trustee attempted to perform its duty.

The record discloses that Treasury Bills were available when the investment was to be made but otherwise it is without information of other investments then available. Nevertheless, the evidence is clear that the trustee gave no consideration to the myriad of investments authorized to be made by a fiduciary under chapter 73 of the code. The testimony estab-

lishes that Treasury Bills would provide income similar to that received on the certificate of deposit without forfeiture or penalty on liquidation. We suggest that there at least existed a possibility that there were numerous other investments then available providing both income and safety of investment, although no other testimony with regard thereto has been presented.

Mr. Justice Linn has indicated the direction of our examination in Carwithen's Est., 327 Pa. 490, 194 Atl. 743 (1937), at 327 Pa. 493, as follows:

"If a trust investment is properly questioned, the burden of showing the wisdom or propriety of his conduct in making it is on the trustee. It is at that time and in that proceeding that the discretion exercised by him will be scrutinized in the light of the will and of the Fiduciaries Act. The primary inquiry will be whether he has performed according to the recognized standard applied to the facts that existed at the time of the investment."

To contemplate placing almost the entire trust res in a four-year investment having the limitations which have been mentioned, without making inquiry concerning other investments available, when the income beneficiary is 88 years of age and distribution would require liquidation at his death, in our opinion, constitutes an improper exercise of care and prudence and is violative of the duty to deal impartially with the beneficiaries. In our opinion, the trustee has conducted itself improperly with respect to the beneficiaries by failing to make inquiry, and, having so failed, further performed without due diligence in making an investment in a four-year certificate of deposit.

We note that prior to the Act of May 15, 1963, P. L. 38, sec. 1, 20 PS §821.12, the investment of funds by a fiduciary in deposits in the institution which is fiduciary, i.e., a trust department in the commercial de-

partment, was proscribed. We have not extended our research beyond the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 1, 20 PS §321, et seq., but note that section 801, subsection (11) thereof provides as follows:

"[N]or shall such investments be made in deposits in the institution which is fiduciary of such estate."

The Fiduciaries Investment Act of May 26, 1949, P. L. 1828, sec. 1, 20 PS §21.1, as amended, et seq., at 20 PS §821.12, provided that an interest-bearing deposit shall be an authorized investment if—

"(1) not in the commercial department of a corporate fiduciary of the estate or trust to which the funds belong; . . ."

We do not know, nor do we indulge in conjecture pertaining thereto, the basis on which the long-standing proscription was eliminated. It seems obvious that there immediately comes into existence a conflict of interest. The discussion of President Judge Dwyer, of the Orphans' Court Division of the Court of Common Pleas of Erie County in Seidel Est., 22 Fiduc. Rep. 343 at 344-46, is of interest, as follows:

"Fee for Collecting Income

"The account and the testimony presented at the hearing reflect that the executors invested large sums of the estate money in certificates of deposit in the commercial department of the bank-executor. The income received by the estate on these certificates of deposit amounts to more than one hundred thousand dollars ($100,000). The commercial department of the bank-executor paid the executors interest comparable in amount to interest that said executors would have received had they invested these sums in short-term United States Government bills. The commercial department of the bank-executor would then lend this money out to its own customers at a rate of interest greater than the amount it paid to the

executors. The bank-executor was lending money from this estate for a greater amount of interest than it was paying to the estate, and then when the bank-executor paid the estate the interest due the estate, said bank-executor would then charge a fee to the estate for paying itself this interest.

"This court is not passing at this time on the practice of the bank-executor, in cooperation with the other executors, in lending estate money to itself and then in turn reloaning this money to the customers of the bank-executor and not returning to the estate the entire interest received by the bank-executor from its customers.

"The bank-executor is a fiduciary of this estate and if it invests assets of the estate it must do so for the benefit of the estate and not for its own gain. The court therefore declares that the bank-executor is not entitled to a collection fee on the interest it paid to the estate and the bank-executor will be ordered to reduce its collection fee on the total income collected on behalf of the estate, so that said collection fee of 5% will only be charged on income received from sources other than itself."

Under the circumstances, there was continually present a possibility of a windfall to the commercial department of the bank in the form of forfeiture and penalty. Some indication of the possibility of realization is obtained by noting that the American Experience Table of Mortality appearing at pages 704 and 705 of Moore's Handbook of Financial Mathematics sets forth for Complete Expectation of Life of an individual at the age of 88 to be 1.91 years.

We hesitate to conclude on the present record that all investments in four-year certificates are suspect, but we do conclude that, in the circumstances here present, the loss must be borne by the trustee. We will, therefore, in our adjudication to be filed in this matter, surcharge the accountant the sum of $900.54.